IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: LE-NATURE'S, INC., COMMERCIAL LITIGATION | ) No. 9-MC-162 ) |

---

| | |
|---|---|
| COMPASS FINANCIAL CORPORATION AND COMPASS BANK, | ) ) No. 9-CV-430 ) |
| Plaintiffs, | ) ) |
| VS. | ) |
| MARSHALL INVESTMENTS CORP., ET AL., | |
| Defendants. | |

**OPINION AND ORDER**

**SYNOPSIS**

This action is part of a consolidated multi-district proceeding with which the parties are quite familiar, and thus the facts need not be recounted at length. Here, Compass Financial Corporation and Compass Bank (collectively, "Compass") allege that the Krones Defendants (collectively, "Krones") violated RICO, by participating in a fraudulent scheme involving the financing of equipment for LeNatures, Inc. Krones has moved to dismiss Compass' Second Amended Complaint, primarily on grounds that the pleading fails to fulfill RICO's proximate cause requirement.[1]

For the following reason, the Motion will be denied.

---

[1] Defendants' Motion does not raise failure to properly plead conspiracy. That issue is raised only in their Reply Brief.
Another Motion, in which Defendants' arguments largely overlap those raised in the present Motion, is pending in MB Financial Bank v. Marshall Investments, No. 9-469. Today, I file a substantially similar Order in that case.

**OPINION**

**I. Applicable Standards**

In deciding a motion to dismiss, all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff. Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). In ruling on a motion to dismiss for failure to state a claim, I must look to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide the defendants with adequate notice to frame an answer." Id. at 666. Complaints "need not plead law or match facts to every element of a legal theory." Weston v. Pennsylvania, 251 F. 3d 420, 429 (3d Cir. 2001). A plaintiff, however, must "nudge [her] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). A complaint must contain "enough factual matter (taken as true) to suggest" the elements of the claims asserted. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  Under Fed. R. Civ. P. 12(c), addressing lack of standing, the same standards apply.[2]  Onconome, Inc. v. Univ. of Pittsburgh, No. 09cv1195, 2010 U.S. Dist. LEXIS 27304, at *3 (W.D. Pa. Mar. 23, 2010).

Also relevant here, Fed. R. Civ. P. 8 '"requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon

---

[2]Defendants bring their Motion pursuant to Rule 12(b)(6), but causation is intertwined with standing in the RICO context.

which it rests.'" Twombly, 550 U.S. at 555.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Heightened pleading standards do not apply to a civil RICO claim.  South Broward Hosp. Dist. v. MedQuist, Inc., 516 F. Supp. 2d 370, 393 (D.N.J. 2007).

## II. RICO

In order to state a violation, a RICO plaintiff is required to make a showing "that the plaintiff 's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." Maio v. Aetna, 221 F.3d 472, 483 (3d Cir. Pa. 2000).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006)).  The pertinent inquiry requires careful consideration of the "relation between the injury asserted and the injurious conduct alleged." Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992).  "A proximate cause is not, however, the same thing as a sole cause. Instead, a factor is a proximate cause if it is a 'substantial factor in the sequence of responsible causation.'" Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23-24 (2d Cir. 1990); see also Williams v. Mohawk Indus., 465 F.3d 1277, 1288 (11th Cir. 2006); Miller v. Asensio & Co., 364 F.3d 223, 232 n.6 (4th Cir. 2004).

To determine whether a plaintiff has adequately pled proximate cause in a civil RICO action, our Court of Appeals has assessed three factors: the directness of the injury; the difficulty in apportioning damages; and whether a plaintiff's

claim is more appropriately brought by a different party. <u>Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.</u>, 171 F.3d 912, 933 (3d Cir. 1999). Moreover, courts have considered factors such as whether the plaintiff was the intended target of the RICO offense; whether injury to the plaintiff was a reasonably foreseeable consequence of the offense; the existence of independent intervening causes; and the risk of multiple recoveries. <u>Anderson v. Ayling</u>, 297 F. Supp. 2d 805, 810 (E.D. Pa. 2003). In this context, proximate cause "is a flexible concept that does not lend itself to 'a black letter rule that will dictate the result in every case.'" <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639, 128 S. Ct. 2131, 2142, 170 L. Ed. 2d 1012 (2008). Case law suggests that an intervening act might break the causal chain if it is foreseeable. See <u>In re: Actiq Sales & Marketing Prac. Litig.</u>, No. 7-4492, 2009 U.S. Dist. LEXIS 43710, at **9-10 (E.D. Pa. May 22, 2009). In the RICO context, "a fraudulent misrepresentation can proximately cause actionable injury even to those who do not rely on the misrepresentation." <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639, 128 S. Ct. 2131, 2144, 170 L. Ed. 2d 1012 (2008).

Here, Krones argues that the alleged acts of CIT and Marshall broke the causal link between the Krones' alleged actions and the claimed injury. Defendants rely, in large part, on <u>Longmont United Hosp. v. St. Barnabas Corp.</u>, No. 6-2802, 2007 U.S. Dist. LEXIS 48187 (D.N.J. June 26, 2008), <u>aff'd</u>, 305 Fed. Appx. 892 (3d Cir. 2009). In that case, a defendant hospital allegedly defrauded the government in violation of RICO, through submitting inflated medicare charges. The plaintiff, another hospital, alleged that the fraud set off a chain of events

that resulted in other hospitals, including itself, receiving reduced medicare payments – because the government made higher payments to defendant, it allegedly distributed fewer or less in payments to other hospitals than it would have absent defendant's inflated charges.  Id. at **4-6.  The court found that the alleged injury was not direct, but was instead derivative of the injuries sustained by the government.   Id. at **14-15.[3]  The court also found that assessing damages, under the circumstances, would be arduous, complex, and speculative.[4]  Id. at **20-21.  Finally, it found that the government was the directly injured victim, and was "especially ready and able to vindicate" the claims.   Id. at *22.  For these reasons, proximate cause was lacking.  Id. at *22.

The facts alleged by the present Plaintiffs, however, paint a very different picture than that in Longmont.  There is no suggestion that in Longmont, the defendant's goal was to reduce payments to other hospitals such as the plaintiff.  In contrast, in this case, the relationship between the alleged fraud and injury is not so attenuated.  Plaintiffs aver that Krones, CIT, and Marshall made misrepresentations to them, in order to "minimize their own risk by putting Compass and other investors" at risk.   Moreover, the injury alleged here was not derivative of or indirect "fallout" from of an injury more directly sustained by CIT or Marshall, in the same manner as the Longmont plaintiff's injury.  Instead,

---

[3]As the Court of Appeals later stated, the impact of defendant's conduct on plaintiff "hinge[d] entirely on [the government's] administration of the Medicare reimbursement system." Longmont, 305 Fed. Appx. at 896.

[4]The inquiry involved, for example, the near impossibility of attributing injury between the government agency's interpretation of medicare payment regulations and the defendant's conduct.  Longmont, 305 Fed. Appx. at 896.

Plaintiffs aver, for example, that they were directly and proximately injured when "CIT and Marshall materially aided and abetted, through knowing assistance, [Krones] in the kickback scheme...."  In other words, Plaintiffs' allegations do not depict them as tertiary or incidental victims of a fraud aimed at another.

Similarly, Plaintiffs' alleged injuries did not merely "flow through" Marshall and CIT as intermediaries, or hinge entirely on their conduct as independent actors, according to the Second Amended Complaint.  Even if perfunctorily, Plaintiffs alleges that they were victimized by Defendants' concerted action: "CIT, Marshall and Krones committed a series of wrongs directed at Compass"; "CIT, Marshall and Krones misprepresented to Compass material facts, upon which Compass reasonably relied," and the three parties "fail[ed] to disclose other material facts"; "CIT and Marshall knew about...Krones schemes and decided to join in"; Krones, CIT, and Marshall formed an "enterprise," and the like.  For example, Plaintiffs also describe an excess payment arrangement, involving Krones, CIT, and LeNature's. The fact that CIT and Marshall are alleged to have made self-interested decisions along the way does not negate the plausible averments of combined action or agreement.

Additionally, an assessment of damages in this case does not involve a complex inquiry, such as <u>Longmont</u>'s analysis of pricing and billing in the context of a government medical program.  Instead, the issue revolves around Plaintiffs' alleged loss of discrete amounts of funds in the fraudulent scheme allegedly perpetrated by Defendants.  The amount of loss is thus not unduly difficult to

determine. Likewise, for the same reason, there is no suggestion that it would be difficult to apportion damages between the allegedly injured parties.[5] Each allegedly injured party has a separable claim for damages. Finally, this case does not involve a wounded government agency, which is "especially" ready and able to vindicate its losses, or another party injured "more directly" than Compass; instead, it involves CIT and Marshall, who are intimately factually intertwined with Plaintiffs and Krones, and the material facts of this case.[6] That CIT and Marshall have chosen to pursue claims against Krones does not render their lawsuits more appropriate than this one. For these reasons, Longmont is not controlling.[7]

Indeed, courts in this Circuit have found proximate cause, even in the presence of intermediate actors. For example, in In re: Actiq Sales & Marketing Prac. Litig., 2009 U.S. Dist. LEXIS 43710, plaintiff insurance companies brought a RICO action against a drug manufacturer. The insurers alleged that defendant pursued a deceptive marketing scheme for off-label uses of a particular drug, which encouraged physicians to prescribe the drug inappropriately. As a result, Defendant pleaded guilty to FDA violations. The plaintiff insurers claimed injury

---

[5]To the extent that Defendant intends to rely on the difficulty in allocating damages attributable to different wrongdoers – as opposed to apportioning damages recoverable by different injured plaintiffs – I note that courts and juries routinely apportion responsibility for damages between joint tortfeasors and co-conspirators. Defendant has not persuaded me that this case, unlike the situation present in Longmont and similar cases, is any different.

[6]At least one court has declined to apply this factor – whether other, more directly injured plaintiffs will vindicate the claim – in the absence of a subrogation-type issue. Magnum v. Archdiocese of Phila., No. 6-2589, 2006 U.S. Dist. LEXIS 84123, at *25 (E.D. Pa. Nov. 17, 2006).

[7]Northwestern Human Servs., Inc. v. Panaccio, 03-157, 2004 U.S. Dist. LEXIS 19147 (E.D. Pa. Sept. 24, 2004), on which Defendants also rely, is similarly distinguishable. That case involved medicare fraud, and the alleged injuries – legal fees and civil penalties – were, as the present Defendants put it, "fallout" rather than an integral part of the alleged scheme. Not so under the present Plaintiff's allegations.

as a result of excessive prescription costs for off-label use of the drug.  Id. at **2-4.  The defendant moved to dismiss the claims, arguing that the acts of intervening decisionmakers, such as prescribing physicians, negated causation.  Id. at **4-5.  The court found that the "intervening acts" were not unforeseeable, and were an intended result of defendant's marketing scheme.  Id. at **9-10.  Accordingly, the allegations that the marketing scheme induced the overpayment was sufficient to satisfy causation at the pleading stage.  Id. at *10.

This case shares certain important similarities with cases such as Actiq. [8]  The present Plaintiffs aver that they and other investors were targets of conspiratorial conduct.  As in Actiq, the facts pled here simply do not support a conclusion that the alleged injury to Plaintiffs was unforeseeable or unintended.  Contrary to Defendants' suggestion, this is not a case in which "any number of independent forces and decisions may have intervened between the alleged concealment and the [harm]."  Magnum v. Archdiocese of Phila., No. 6-2589, 2006 U.S. Dist. LEXIS 84123, at * (E.D. Pa. Nov. 17, 2006).[9]  Nor is it a case in which

---

[8] As the Supreme Court recently confirmed, "The concepts of direct relationship and foreseeability are of course two of the 'many shapes [proximate cause] took at common law,'" and "in the RICO context, the focus is on the directness of the relationship between the conduct and the harm."  Hemi Group, LLC v. City of New York, 130 S. Ct. 983, __U.S.__, 175 L. Ed. 2d 943 (2010).  "Proximate cause for RICO purposes...should be evaluated in light of its common-law foundations."  Id. at 989.  While the proper focus is on directness rather than foreseeability, there is no suggestion that the flexible proximate cause inquiry cannot take note of the foreseeable and intended consequences of a fraudulent act or scheme.  Indeed, intentions and foreseeability, while not the proper focus – and not the sole grounds for my decision today – might be relevant to assessing the directness of the injury.  Indeed, cases such as Actiq consider these concepts in the context of evaluating the directness of the injury.  Actiq was decided well after the rule that the "central question...is whether the alleged violation led directly to the plaintiff's injuries."  Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006).

[9] In Magnum, plaintiffs, who were allegedly abused by priests as minors, claimed that the defendants violated RICO by covering up a pattern of child abuse by priests.   As regards lost legal claims, the court found that any number of independent forces and decisions, other than the alleged cover-up, could have caused victims of abuse not to seek legal redress.  Magnum v.

"intricate, uncertain" inquiries are required to link the alleged fraud and injuries. <u>Anza</u>, 547 U.S. at 460.

## CONCLUSION

In sum, under standards applicable at this pleading stage, Plaintiffs' Second Amended Complaint is adequate. While the involvement of other actors might ultimately weaken the causal connection, Plaintiffs' Second Amended Complaint gives Defendants fair notice of the claims and grounds therefor, and contains enough factual matter to suggest proximate cause. Under applicable standards and at this stage in the litigation, it is adequately pleaded. The Motion will be denied, and an appropriate Order follows.

## ORDER

AND NOW, this 6th day of May, 2010, it is hereby ORDERED, ADJUDGED, and DECREED that the Krones Defendants' Motion to Dismiss (Docket No. [149]) is DENIED.

                                BY THE COURT:

                                <u>/s/Donetta W. Ambrose</u>

                                Donetta W. Ambrose

                                Judge, United States District Court

---

<u>Archdiocese of Phila.</u>, 2006 U.S. Dist. LEXIS 84123, at *27.